**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
CHELSEA J. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_CJCChambers@mdd.uscourts.gov
(410) 962-4560

October 26, 2026

**REPORT AND RECOMMENDATION RE:** *Int'l Painters & Allied Trades Indus. Pension Fund,* et al. *v. Statesville Painting & Maint., LLC,* et al., Civil Action No. JRR-23-2436

Dear Counsel:

This matter was referred to the undersigned by the Honorable Julie R. Rubin in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 to review a motion for default judgment and/or make recommendations concerning damages. ECF No. 105. No hearing is necessary. Loc. R. 105.6. For the reasons set forth below, I recommend that Plaintiffs' motion be granted.

## I. Factual and Procedural Background

This action is brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, for unpaid contributions. ECF No. 58. Plaintiffs are International Painters and Allied Trades Industry Pension Fund ("Pension Fund"), International Painters and Allied Trades Annuity Plan ("Annuity Plan"), Finishing Trades Institute ("FTI"), and Daniel Williams (collectively, "IUPAT Funds"), as well as Southern Painters Welfare Fund ("Welfare Fund"), Bruce Wohl, and Paul Canning (collectively, "SP Funds"). Defendant Statesville Painting and Maintenance, LLC ("Statesville") is a signatory to a collective bargaining agreement that imposes obligations on Statesville for the benefit of both IUPAT and SP Funds Plaintiffs. ECF No. 58 ¶¶ 17–22. Defendant SPM Builders, LLC ("SPM") is alleged to be bound by the collective bargaining agreement. ECF No. 58 ¶¶ 23–27. The Complaint alleges that Defendants failed to make required contributions and remittances due to Plaintiffs under the collective bargaining agreement and trust agreements from March 2021 through the present and failed to submit to an audit for the period of March 2021 through "the date of inspection."[1] ECF No. 58 ¶¶ 28–30, 40.

Plaintiffs served process on Defendants, *see* ECF No. 21, who answered or otherwise responded to the amended complaint. ECF Nos. 39, 51. On June 9, 2025, Judge Rubin granted Plaintiffs leave to file the Second Amended Complaint, which remains the operative pleading in

---

[1] Plaintiffs' Motion for Default Judgment modifies the audit period to April 1, 2021 through March 31, 2024. ECF Nos. 103-2 at 2, 14; 103-3 ¶¶ 4–5.

this case. ECF Nos. 57–58. On March 16, 2026, counsel for Defendants filed a motion to withdraw. ECF No. 84. Judge Rubin granted the motion on May 7, 2026, and Defendants were provided 21 days to show cause why default should not be entered against them. ECF No. 95. On June 15, 2026, default was entered against both Defendants. ECF Nos. 98, 100. Plaintiffs now move for an entry of default judgment against Defendants pursuant to Federal Rule of Civil Procedure 55(b)(2) for Defendants' failure to appear or otherwise defend in this matter. ECF No. 103. The motion is unopposed.

## II. Default Judgment

Federal Rule of Civil Procedure 55 governs entries of default and default judgments. Unless a party's claim is for a "sum certain" or "a sum that can be made certain by computation," "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)–(2). While the Fourth Circuit has a "strong policy that cases be decided on their merits, … default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421–22 (D. Md. 2005) (citation modified). "In considering a motion for default judgment, this Court accepts as true the well-pleaded factual allegations in the complaint as to liability." *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001)); *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Aerodynamics Inspecting Co.*, Civil Action No. 120CV01592TSEIDD, 2021 WL 4185883, at *3 (E.D. Va. July 14, 2021) (evaluating Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) standard and recommending presiding judge enter default judgment), report and recommendation adopted, No. 1:20-CV-1592, 2021 WL 4171715 (E.D. Va. Sept. 13, 2021). If liability is established, then the "court must make an independent determination regarding damages and cannot accept as true factual allegations of damages." *Cap. Restoration & Painting Co.*, 919 F. Supp. 2d at 684. "[T]he Court may award damages without a hearing if the record supports the damages requested." *Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civil Action No. ELH-11-0832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011).

### A. Statesville's and SPM's Obligations Under the Collective Bargaining Agreement

While Statesville is the only signatory to the collective bargaining agreement, Plaintiffs contend that SPM is also bound "pursuant to the Preservation of Work clause, Successor clause[,] and/or as a single employer and alter ego with Statesville under Federal common law." ECF No. 58 at 17.[2] Both the "single employer" and "alter ego" doctrines determine whether two entities will be treated as one employer for purposes of enforcement of a collective bargaining agreement for delinquent contributions. *Trs. of Nat'l Automatic Sprinkler Indus. Pension Fund v. Budget Plumbing Corp., Inc.*, 111 F. Supp. 2d 716, 719 (D. Md. 2000) (finding facts presented met elements of both doctrines). "The two doctrines are interrelated in that one corporation is the alter ego of another where the factors necessary to support a 'single employer' finding are met and, ... the second corporation is a 'disguised continuance' of the employing enterprise...." *Id.* at

[2] Citations to the parties' filings refer to the page number provided in the CM/ECF filing header, not the PDF pagination.

719 (internal citations and quotations omitted). "The paramount question is whether there is an arm's length relationship between the entities." *Md. Elec. Indus. Health Fund v. MESCO, Inc.*, Civil Action No. ELH-12-0505, 2014 WL 853237, at *6 (D. Md. Feb. 28, 2014) (internal quotations omitted). Entities deemed to be a single employer, or alter egos of one another, are jointly and severally liable for delinquent contributions. *Budget Plumbing Corp., Inc.*, 111 F. Supp. 2d at 719.

"Two entities will be considered a single employer by law if they have an interrelation of operations, common management, centralized control of labor relations, and common ownership." *Id.* at 719–20 (citing *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965)). No one factor is determinative, but rather, "[t]he Court must make an overall assessment of whether there is an arm's length relationship between the entities." *Id*. at 720 (citing *Vance v. NLRB*, 71 F.3d 486 (4th Cir. 1995), and *South Prairie Constr. Corp. v. Local No. 627, Int'l Union of Operating Eng'rs*, 425 U.S. 800, 802–03 (1976)). The Fourth Circuit established a two-part test to identify whether an entity is an alter ego of another. *Alkire v. NLRB*, 716 F.2d 1014 (4th Cir. 1983). First, the Court must determine "whether substantially the same entity controls both the old and new employer." *Id.* at 1020. Relevant factors to the analysis include: "continuity of ownership, similarity of the two companies in relation to management, business purpose, operation, equipment, customers, supervision, and anti-union animus." *Id*. If that element is satisfied, then the Court must assess "whether the transfer resulted in an expected or reasonably foreseeable benefit to the old employer related to the elimination of its labor obligations." *Id*. "Continuity of ownership … can be particularly relevant in assessing the expectation or foreseeability of a benefit." *Md. Elec. Indus. Health Fund v. Kodiak Util. Constr., Inc.*, 289 F. Supp. 2d 698, 703 (D. Md. 2003).

Here, Plaintiffs' Second Amended Complaint has sufficiently alleged that the Defendants are both a single employer and alter egos of one another. The Complaint alleges that both Statesville and SPM maintain the same address for their principal place of business and registered office, have the same managing member, work in the same industry and perform the same or similar work, share resources, facilities, and equipment, and utilize each other's employees. ECF No. 58 ¶¶ 24, 26. Plaintiffs allege that the two entities are used interchangeably, "with SPM taking advantage of Statesville's signatory status in order to gain access to Union jobs and members." ECF No. 58 ¶¶ 24, 26. Furthermore, publicly available information from the North Carolina Secretary of State supports many of Plaintiffs' allegations.[3] The respective articles of organization show that Statesville was established in 2014, and SPM was established in 2017. Both Statesville and SPM have the same registered agent, registered address, and principal business address. Statesville lists Vincent Brown as its managing member, and SPM lists Vincent Brown Sr. as its managing member and Vincent C. Brown as a member. Of note, in its 2025 Annual Reports filed with the North Carolina Secretary of State, Statesville described

[3] The Court takes judicial notice of this information because it concerns "matters of public record, including publicly available information on state and federal government websites." *Xerox Fin. Servs., LLC v. JP1 Enters., Inc.*, Civil Action No. DRM-23-3493, 2025 WL 1884855, at *3 (D. Md. July 8, 2025) (citing *U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017)); *Charm City Hemp, LLC v. Moore*, Civil Action No. JRR-25-1744, 2026 WL 850465, at *2 (D. Md. Mar. 27, 2026) (stating that Court may utilize Maryland Business Entity Search and take judicial notice of results as a government public website).

the nature of its business as "[c]ommercial and industrial painting." In contrast SPM's report simply states "Statesville Painting and Maint LLC," in lieu of a substantive description. SPM provided this same description in its Annual Reports filed for 2023, 2022, and 2020.

Plaintiffs' allegations, paired with the publicly available information pertaining to Defendants from the North Carolina Secretary of State, illustrate that Statesville and SPM are substantially the same. *Int'l Painters & Allied Trades Indus. Pension Fund v. Finch Indus. Coatings LLC*, Civil Action No. ELH-18-2333, 2019 WL 6044197, at *3 (D. Md. Nov. 15, 2019) (Coulson, J.) (recommending that presiding judge find two defendants were the same entity because both had "the same incorporator and officer or member, … as well as the same business address" and they "shared equipment and employees, and the same business purposes"); *Budget Plumbing Corp.*, 111 F. Supp. 2d at 722 (finding two entities were "interrelated in their operations" and thus both a single employer and alter egos of one another for purposes of liability for delinquent contributions). This is sufficient to find that Statesville and SPM were a single employer.

As to alter ego, given that the two entities are substantially the same, the undersigned must next determine whether SPM provided "an expected or reasonably foreseeable benefit" to Statesville "related to the elimination of its labor obligations." *Alkire*, 716 F.2d at 1020. Here, evidence of continuity of ownership, alongside Plaintiffs' allegations that Defendants exhibited "anti-union animus" in shifting "covered work from a signatory [Statesville] to a non-signatory entity [SPM]," demonstrates a benefit to Statesville. ECF No. 58 ¶ 26. Because SPM and Statesville are a single employer and alter egos of one another, they are jointly and severally liable for Statesville's obligations. *Budget Plumbing Corp., Inc.*, 111 F. Supp. 2d at 719.

**B. Liability**

Plaintiffs assert violations of both ERISA and LMRA. This Court has jurisdiction over ERISA claims under 29 U.S.C. § 1132(e) and LMRA claims under 29 U.S.C. § 185(a). "As the recovery would be the same under both statutes, the Court will analyze these claims under ERISA." *Trs. of Elec. Welfare Tr. Fund v. Tech. Serv. Grp., LLC*, Civil Action No. GJH-14-3018, 2016 WL 5462800, at *3 (D. Md. Sep. 27, 2016). Plaintiffs comprise of employee benefit plans under 29 U.S.C § 1002(3), multiemployer plans under 29 U.S.C. § 1002(37), and management-labor associations under 29 U.S.C. § 186(c)(9). *See* ECF No. 58 ¶¶ 1–9. All Plaintiffs are represented by a fiduciary and/or collection agent. *Id.*; *see* 29 U.S.C. § 1002(21)(A). Defendants are employers as defined by ERISA. ECF No. 58 ¶¶ 10–11 (citing 29 U.S.C. § 1002(5) and 29 U.S.C. § 152(2)).

ERISA Section 515 provides that every employer "who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. ERISA, therefore, "provide[s] trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions." *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685–86 (D. Md. 2013) (quoting *Laborers Health & Welfare Trust Fund for Northern Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988)). Similarly, under the LMRA, Plaintiffs

may file suit for violations of labor contracts. 29 U.S.C. § 185(a); *Int'l Painters & Allied Trades Indus. Pension Fund v. DLC Corp.*, Civil Action No. WDQ-11-1938, 2012 WL 1229491, at *4 (D. Md. Apr. 11, 2012) (Gesner, J.) (stating that the LMRA "authorizes plaintiffs, as an employee benefit trust fund and trustee, to bring such an action to enforce the terms of the CBA and to seek remedies for its breach.").

To establish liability, Plaintiffs must show that Defendants were "obligated to make contributions … under the terms of a collective bargaining agreement and that [they] failed to make such contributions." *Trs. of Nat'l Automatic Sprinkler Indus. Welfare Fund v. Ornell Fire Sprinkler, Inc.*, Civil Action No. AAQ-23-2080, 2024 WL 640030, at *3 (D. Md. Feb. 15, 2024). To support their factual allegations, Plaintiffs provide the collective bargaining agreement (ECF No. 103-4) supported by the sworn declaration of Michael O'Malley, Plaintiffs' Audit and Collections Director who "manag[es] the Fund's audit program" and maintains various contributions records, including funds received and owed. ECF No. 103-3 ¶ 1. Mr. O'Malley attests that Statesville was a signatory to a collective bargaining agreement for the period of April 1, 2021, to March 31, 2024, under which Statesville was obligated to make certain monthly contributions and remittances to Plaintiffs as well as comply with an audit of its payroll records upon Plaintiffs' request. ECF No. 103-3 ¶¶ 3–8. Mr. O'Malley further attests that Statesville failed to provide the records requested and comply with the audit. ECF No. 103-3 ¶ 10. Accepting Plaintiffs' allegations as true, they have established Defendants' liability and judgment should be entered in their favor.

### C. Damages

An employer that fails to make the required contributions is liable for unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorneys' fees and legal costs, and any other relief the Court deems appropriate. *Trs. of the Elec. Welfare Tr. Fund v. Max Elec. Constr. Corp.*, Civil Action No. TDC-25-3715, 2026 WL 1153037, at *4 (D. Md. Apr. 29, 2026) (Quereshi, J.) (citing 29 U.S.C. § 1132(a), (g)). Other legal and equitable relief includes injunctive relief when appropriate. *Int'l Painters & Allied Trades Indus. Pension Fund v. Shoemaker LLC*, Civil Action No. ELH-24-3575, 2026 WL 1238546, at *7 (D. Md. May 6, 2026). "Because ERISA authorizes injunctive relief as a possible remedy, an injunction requiring Defendants to submit to an audit is warranted as long as the Funds establish the prerequisites for an injunction – namely, a showing of irreparable harm and the absence of an adequate legal remedy." *Trs. of Plumbers & Gasfitters Loc. 5 Ret. Sav. Fund v. DC Mech., LLC*, Civil Action No. DKC-22-2770, 2023 WL 3173919, at *3 (D. Md. May 1, 2023). "Even when Plaintiffs do not request a specific amount of damages because they do not know the amount of unpaid contributions, but rather request an audit of an employer's records, it is appropriate for the court to issue an Order that the Defendant be required to pay the amount the audit determines is owed, pursuant to [29 U.S.C § 1132](g)(2)(e)." *Shoemaker LLC*, 2026 WL 1238546, at *7 (internal quotation marks and citation omitted). And because recovery is the same under ERISA and the LMRA, they are both analyzed under ERISA. *Tech. Serv. Grp., LLC*, 2016 WL 5462800, at *3.

Plaintiffs seek injunctive relief, in addition to unpaid contributions, liquidated damages, and interest. ECF No. 103-2. Specifically, they ask the Court to enter an order "requiring Defendants to comply with their obligations to Plaintiffs to permit the audit of their payroll

records requested by Plaintiffs for the period from April 1, 2021, through March 31, 2024." ECF No. 103-2 at 12. In the absence of the documents necessary to calculate unpaid contributions, Plaintiffs seek the right to request an Amended Judgment once Defendants have complied with the audit for any amounts found due, including unpaid contributions, liquidated damages, and interest. ECF No. 103-2 at 8, 13. Plaintiffs may obtain an injunction requiring Defendants to comply with an audit if they establish: "(1) irreparable injury, (2) remedies at law are inadequate to compensate for that injury, (3) the balance of hardships between the plaintiff and defendant warrants a remedy, and (4) an injunction would not disserve the public interest." *Raub v. Campbell,* 785 F.3d 876, 885 (4th Cir. 2015) (quoting *Monsanto Co. v. Geerston Seed Farms,* 561 U.S. 139, 156–57 (2010)).

Here, "[i]njunctive relief is appropriate because, without an audit, plaintiffs cannot enforce their contractual rights pursuant to the Bargaining Agreement and Trust Agreements." *Shoemaker LLC*, 2026 WL 1238546, at *9. By failing to comply with the audit, Defendants have cause Plaintiffs "irreparable injury" that lacks an adequate legal remedy. *Nat'l Elec. Benefit Fund v. 3W Elec. LLC*, Civil Action No. PWG-16-1580, 2017 WL 1079954, at *7 (D. Md. Mar. 20, 2017). Because Plaintiffs lack any payroll records, they cannot calculate or estimate the amount of contributions owed. *See id.* Furthermore, an injunction here would "merely enforce Defendant[s'] preexisting obligations" while also "serv[ing] the public interest by ensuring that employees receive the pensions they are owed." *Id.* Plaintiffs have established the elements necessary to obtain an injunction. Therefore, the undersigned recommends that Plaintiffs' request for injunctive relief be granted, and that Plaintiffs have the opportunity to seek an amended judgment for additional monetary damages following the audit.

**D. Attorneys' Fees and Costs**

In addition to monetary damages and injunctive relief, Plaintiffs seek $67,933.25 in attorneys' fees and $1,066.74 in costs billed to the IUPAT Funds and $31,921.75 in attorneys' fees billed to the SP Funds. ECF No. 103 at 2. "[W]hen the Court enters judgment in favor of the plaintiff in an ERISA action for a plan to recover unpaid contributions, it 'shall award the plan … reasonable attorney's fees and costs of the action, to be paid by the defendant.'" *Shoemaker LLC*, 2026 WL 1238546, at *9 (quoting 29 U.S.C. § 1132(g)(2)(D)). Defendants found to be jointly and severally liable on the merits may also be jointly and severally liable for attorneys' fees and costs. *MESCO, Inc.*, 2014 WL 853237, at *15. To determine the amount of reasonable attorneys' fees, the Court must determine the "lodestar amount," which is defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). The movant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). To assist in the determination of reasonableness, the Court considers the 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.*:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee or rates; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the

> case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

488 F.2d 714, 717–19 (5th Cir. 1974) (cleaned up); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (endorsing *Johnson* factors). The lodestar amount is presumed reasonable. *McAfee v. Boczar*, 738 F.3d 81, 88–89 (4th Cir. 2013), *as amended* (Jan. 23, 2014). After consideration of the lodestar amount, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones," and "award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* at 88 (citation modified).

Also relevant here are this Court's Local Rules, which include guidelines for billing formats and time recordation, compensable and non-compensable time, hourly rates, and reimbursable expenses. Loc. R. App'x B §§ 1–4. As to hourly rates, the guidelines provide that

> [r]easonable hourly rates should be determined by the Court using declarations, affidavits, stipulations by the parties, or other evidence. A useful guideline for hourly rates may be provided by the Fitzpatrick Matrix[ ] as adjusted annually, with a reduction of 5% to 20% (to reflect differences between the legal markets in Washington, D.C. and Maryland).

Loc. R. App'x B § 3. "When considering a published fee matrix, like the Fitzpatrick Matrix … the Court cannot 'elevate a matrix above all other types of evidence or treat a matrix as establishing a presumptive answer or range of answers.'" *Tesfay v. Travel Centers of Am.*, Civil Action No. CJC-25-1242, 2026 WL 171710, at *2 (D. Md. Jan. 22, 2026) (quoting *De Paredes v. Zen Nails Studio LLC*, 134 F.4th 750, 754 (4th Cir. 2025)). Rather, the court must "must consider all relevant evidence to determine the prevailing market rates in the relevant community … including lawyer affidavits, fee awards in similar cases, general surveys, fee matrices, and even its own personal knowledge." *De Paredes*, 134 F.4th at 754 (citation modified).

In support of their request for attorneys' fees and costs, Plaintiffs have provided the affidavit of Michele R. Stafford, a partner at the firm Tucker Arensberg, LLP, and one of five individuals—three attorneys and two paralegals—who worked on this case. ECF No. 103-5. The affidavit describes the billing records generated from August 2023 to May 2026 for the IUPAT Funds and the SP Funds but does not provide a breakdown of the hours worked. ECF No. 103-5. Ms. Stafford has been practicing law since 1994 and billed 38.4 hours at $325 to $370 an hour for the IUPAT Funds and billed 9.8 hours at $450 an hour for the SP Funds.[4] ECF Nos. 103-5 at 3, 103-6. The second attorney, Christopher J. Parker, Jr., has been practicing law since 2014 and billed 103.55 hours[5] at $350 to $360 an hour for the IUPAT Funds and billed 64.7 hours at $400

[4] This sentence reflects the true rates billed following the Court's close review of the billing records. Ms. Stafford's affidavit in support of the Motion for Default Judgment provided incorrect rates ranging from $395 to $450 an hour over the course of this case for both the IUPAT and SP Funds.

[5] Mr. Parker billed 4.45 hours at $350 an hour to the IUPAT Funds to raise a discovery dispute before the Court and draft a related fee petition, which he attests totaled $1,522.50. ECF Nos. 65,

an hour for the SP Funds.[6] ECF No. 103-5 at 3. Andrew A. Crampton is the third attorney who worked on this case; he has been practicing law since 2010 and billed 21.3 hours at $350 per hour for the IUPAT Funds. ECF No. 103-5 at 4. Furthermore, paralegal Elise Cotterill billed 38.7 hours at $185 to $220 an hour for the IUPAT Funds and billed 6.45 hours at $220 an hour for the SP Funds.[7] ECF No. 103-5 at 4–5. Paralegal Ellen Rosen billed 14.75 hours at $185 an hour for the IUPAT Funds and billed 1.15 hours at $185 an hour for the SP Funds. ECF No. 103-5 at 4–5. Billing records also reflect that Hunter R. Greenberg billed 1.2 hours at $245 an hour for the IUPAT Funds. ECF No. 103-6 at 91, 93. Ms. Stafford's affidavit fails to provide any information regarding Ms. Greenberg. For several reasons, I recommend a reduction of the requested fees.

First, the hourly rates reflected in the billing records are appropriate as requested except as to Ms. Greenberg. Given that there is no information concerning Ms. Greenberg's position and years of experience, the undersigned cannot recommend an hourly rate. However, Ms. Stafford, Mr. Parker, Ms. Cotterill, and Ms. Rosen have consistently requested similar rates for the same client, in this District, over the same period of time. *See, e.g.*, *Int'l Painters & Allied Trades Indus. Pension Fund v. Pressure Tech, Inc.*, Civil Action No. JKB-25-2152, 2026 WL 2445431, at *6 (D. Md. Aug. 20, 2026) (finding proffered rates for IUPAT Funds reasonable); *Int'l Painters & Allied Trades Indus. Pension Fund v. Indus. Painting & Rigging, Inc.*, Civil Action No. EA-24-3564, 2026 WL 2151761, at *7 (D. Md. July 24, 2026) (same); *Int'l Painters & Allied Trades Indus. Pension Fund v. Se. Tradeshow Servs., LLC*, Civil Action No. JMC-24-2652, 2026 WL 1250310, at *5 (D. Md. May 7, 2026) (finding proffered rates for IUPAT Funds and SP Funds reasonable). While the undersigned cannot identify any fee petitions in Maryland involving Mr. Crampton, a rate of $350 is reasonable considering his years of experience, and it is identical to the rate requested by his colleagues for the same billing year. Therefore, the undersigned recommends the following rates:

---

71. In an October 16, 2025 Order, the undersigned granted Plaintiffs' motion for fees and ordered Defendants to pay the fees as requested, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). Upon review of that Order in connection with resolving this Motion, the undersigned notes that the previous fee award should have been for a total of $1,557.50, not $1,522.50—a difference of $35 dollars (4.45 hours multiplied by a rate of $350 totals $1,557.50). ECF No. 77. Because Defendants have already paid these fees, the undersigned has deducted the 4.45 hours worked from Mr. Parker's total as to the IUPAT Funds. Plaintiffs acknowledge this payment, as they do not include the $1,522.50 in attorneys' fees received in their current request. ECF No. 103-5 at 6. In analyzing the appropriate amount of attorneys' fees in connection with this Motion, the undersigned will apply the corrected amount of fees—$1,557.50 rather than the previous incorrect total of $1,522.50.

[6] This sentence reflects the true rates billed following the Court's close review of the billing records. Ms. Stafford's affidavit in support of the Motion for Default Judgment provided incorrect rates for Mr. Parker ranging from $250 to $400 an hour over the course of this case for both the IUPAT and SP Funds.

[7] This sentence reflects the true rates billed following the Court's close review of the billing records. Ms. Stafford's affidavit in support of the Motion for Default Judgment provided incorrect rates for Ms. Cotterill ranging from $190 to $220 an hour over the course of this case for both the IUPAT and SP Funds.

| Name | IUPAT Funds Hourly Rates | SP Funds Hourly Rates |
|---|---|---|
| Michele R. Stafford | $325 (2023)<br>$350 (2024)<br>$360 (2025)<br>$370 (2026) | $450 (2025, 2026) |
| Christopher J. Parker, Jr. | $350 (2024, 2025)<br>$360 (2026) | $400 (2025, 2026) |
| Andrew A. Crampton | $350 (2024) | - |
| Elise Cotterill | $185 (2023)<br>$200 (2024)<br>$210 (2025)<br>$220 (2026) | $220 (2025, 2026) |
| Ellen Rosen | $185 (2025, 2026) | $185 (2026) |

Second, turning to the hours expended, the billing records reflect block billing and duplicative billing. Block billing, which groups several tasks under a single entry, "is problematic because it does not provide the district court with a clear sense of how many hours were performed on a particular task." *Shoemaker LLC*, 2026 WL 1238546, at *13 (citation modified). Many of the records submitted contain block billing. On August 29, 2025, for example, Ms. Stafford billed .55 hours for five discrete tasks: (1) e-mailing Ms. Rosen regarding Rule 26 disclosures, (2) revising the disclosures, (3) meeting with Ms. Cotterill regarding the status of the Second Amended Complaint, (4) reviewing the Court's memorandum opinion on the motion to stay, and (5) discussing the fee petition with Mr. Parker. ECF No. 103-6 at 70.

Some of the block bills are also duplicative between the IUPAT Funds and SP Funds. *Wei v. Xu*, Civil Action No. ELH-21-0601, 2022 WL 1422926, at *15 (D. Md. May 4, 2022) (highlighting that when counsel's work benefitted two clients, "charges were divided between the [two]" and therefore "there is no double-counting of work across the Attorneys' Fees Petitions"); *c.f. CX Reinsurance Co. Ltd. v. Homewood Realty Inc.*, Civil Action No. JKB-15-3136, 2018 WL 2118547, at *3 (D. Md. Mar. 9, 2018) (Gallagher, J.) (awarding attorneys' fees for discovery dispute but reducing hours billed, in part, because "[f]iling near identical motions on the same day in separate cases with the same attorneys, however, supports an inference that the hours expended in researching the matter were done to benefit both cases."). For instance, on May 16, 2025, Ms. Cotterill block-billed .65 hours to both the IUPAT Funds and SP Funds for reviewing e-mails and the scheduling order, finalizing a motion and proposed amended complaint, and e-filing. ECF No. 103-6 at 55, 101. A total of 1.3 hours for these identical tasks is excessive. And while Mr. Parker sought and was awarded fees for 4.45 hours billed for a discovery dispute and fee petition, Plaintiffs now seek to recover 3.15 hours for the same work billed to the SP Funds that was not raised in the previous fee petition. ECF Nos. 77; 103-5 at 6; 103-6 at 64, 70, 108–109, and 115. *See* A.B.A. Comm. on Ethics & Pro. Resp., Formal Op. 93-379 (1993) ("A lawyer who spends four hours of time on behalf of three clients has not earned twelve billable hours. … A lawyer who is able to reuse old work product has not re-earned the hours previously billed and compensated when the work product was first generated. … The practice of billing several clients for the same time or work product, since it results in the earning

of an unreasonable fee, therefore is contrary to the mandate of the Model Rules. Model Rule 1.5.")

Given the time and labor expended, time limitations imposed by the circumstances, and the awards in similar cases, a total of 217.9[8] hours billed for the IUPAT Funds and 82.1 hours billed for the SP Funds in a span of nearly three years is reasonable. Plaintiffs amended their pleadings, served and responded to discovery requests, and engaged in discovery disputes before the undersigned. However, to account for the fact that the Court is unable to ascertain the reasonableness of Ms. Greenberg's hours as compared to her background, her 1.2 hours billed to the IUPAT Funds should be disregarded, adjusting the hours billed to 216.7 for the IUPAT Funds and 82.1 hours for the SP Funds. Furthermore, in light of the above concerns regarding block billing and duplicative billing, the undersigned recommends a 15 percent reduction in the adjusted amount of hours billed to 184.2 hours for the IUPAT Funds and 69.79 hours for the SP Funds.

Therefore, multiplying the hourly rates with the updated hours expended, the undersigned recommends an adjusted award of $57,463.61 for the IUPAT Funds and $27,133.49 for the SP Funds. Plaintiffs also request $1,066.74 in costs for the IUPAT Funds for the complaint filing fee, service of process fees, express mail fees, and PACER docket search fees. ECF No. 103-5 at 6. This is reasonable. *See Carroll v. Paul L. Off., PLLC*, Civil Action No. DKC-12-2041, 2013 WL 4008873, at *4 (D. Md. Aug. 2, 2013) ("Filing fees and service process fees are reasonable costs of litigation that may be recovered."); *Gen. Eng'g & Tech. Support Servs. v. Balt. Gas & Elec.*, Civil Action No. PX-18-0124, 2020 WL 5747184, at *3 (D. Md. Sept. 25, 2020) (citing Loc. R. App'x B (4) ("reasonable out-of-pocket expenses [ ] including ... express and overnight delivery services ... are compensable at actual cost")); *Carrera v. EMD Sales, Inc.*, Civil Action No. JKB-17-3066, 2021 WL 3856287, at *9 (D. Md. Aug. 27, 2021) (citing Loc. R. App'x B in ruling that PACER fees are reimbursable costs).

## III. Conclusion

For the reasons set forth above, the undersigned recommends that:

1. The Court GRANT Plaintiffs' Motion for Default Judgment (ECF No. 103);

2. The Court award Plaintiffs $57,463.61 in attorneys' fees and $1,066.74 in costs for the IUPAT Funds and $27,133.49 in attorneys' fees for the SP Funds;

3. The Court GRANT Plaintiffs' request for injunctive relief and require Statesville to submit to an audit of its payroll records for the period of April 1, 2021 through March 31, 2024 and provide the records and documents enumerated in ECF No. 103 ¶ 6(d) within 30 days of the Court's order; and

---

[8] This total accounts for the 4.45-hour reduction for Mr. Parker's work addressing a discovery dispute. *See supra* n.5.

4. The Court retain jurisdiction to enter an amended judgment and potential attorneys' fees following the audit if so required.

Sincerely,

*/s/*

Chelsea J. Crawford
United States Magistrate Judge